UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN, FLINT DIVISION

| | |
|---|---|
| In re:<br>THE DOCK ON COOLEY LLC,<br>Debtor. | Case No. 26-30869<br>Chapter 11 (Subchapter V)<br>Hon. Joel D. Applebaum |

/

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENT UNDER FED. R. BANKR. P. 9019; (II) AUTHORIZING SALE OF BUSINESS ASSETS TO COOLEY LAKE BAR & GRILL, INC. FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (III) APPROVING LEASE TERMINATION AND LIQUOR-LICENSE TRANSFER; AND (IV) GRANTING RELATED RELIEF**

The Dock on Cooley LLC, debtor and debtor in possession (the "Debtor"), by its attorney, Robert N. Bassel, moves this Court under 11 U.S.C. §§ 105(a), 363(b), 363(f), 363(m), and 1184, Fed. R. Bankr. P. 2002, 6004, 9014, and 9019, and L.B.R. 9014-1 (E.D. Mich.), for entry of an order approving the settlement described below and authorizing the sale of the Debtor's business assets to Cooley Lake Bar & Grill, Inc. ("Cooley") free and clear of liens, claims, encumbrances, and interests. In support, the Debtor states:

## PRELIMINARY STATEMENT

The proposed transaction resolves the principal disputes that have driven this case: Cooley's asserted rights arising from the 2022 sale of the restaurant business, FBZ Enterprises, LLC's ("FBZ") asserted Lease claims, Perparim Gjura's personal guaranty exposure, and the pending

Oakland County Circuit Court litigation. In return for the Debtor's Business Assets, Cooley and FBZ will satisfy and release the settled claims, liens, Lease obligations, and related rights, and Cooley will pay $49,283.00 in cash at Closing as net purchase proceeds (the "Net Purchase Proceeds"). The parties expressly acknowledge that the Net Purchase Proceeds are proceeds of the Business Assets and property of the Debtor's estate. Cooley expressly consents to the distribution of those proceeds and to the carve-out described in paragraph 2 of the Settlement Agreement (the "Carve-Out"), including $35,000.00 for professional-fee escrows and $14,283.00 to be deposited into a Second DIP Account for the benefit of Gjura, subject to Court approval. At Closing, $20,000.00 will be paid to the Subchapter V Trustee's IOLTA/client trust account, $15,000.00 to Debtor's counsel's IOLTA/client trust account, and $14,283.00 to the Second DIP Account. The professional-fee amounts will remain escrowed pending Court allowance. The Second DIP Account and all funds in it remain property of the estate and are excluded from the Business Assets. Subject to Court approval, the initial $14,283.00 will be paid to Gjura as an administrative expense for his covenant not to compete, release, and cooperation necessary to close the transaction. Upon entry of the Sale Order, the parties will consummate the Sale within fourteen (14) days and execute the Liquor License transfer

application and escrow documents pending Michigan Liquor Control Commission approval.

The transaction should be evaluated as an integrated settlement. The Debtor's estate receives satisfaction and release of Cooley's and FBZ's asserted claims and liens, termination of the Lease, release of the Guaranty and related asserted deficiencies, dismissal of the Circuit Court Action, the consensual Carve-Out and distribution of the Net Purchase Proceeds described in paragraph 2 of the Settlement Agreement, and a prompt and certain exit from expensive litigation. Any portion of the professional-fee escrow not approved for payment to the intended professional will be returned to the Debtor and deposited into the Second DIP Account unless otherwise ordered by the Court. Upon Closing and payment of the Net Purchase Proceeds as required by the Settlement Agreement, Cooley and FBZ will have no further lien, security interest, or claim against the Net Purchase Proceeds or the Second DIP Account. Before the Petition Date, the Debtor and Gjura marketed the business for several months and did not receive an offer that produced a superior net economic result. More recently, Gjura received an informal $290,000.00 offer for his equity interest that contemplated an approximately $29,000.00 broker commission and would have required additional cash to close. The

proposed Settlement eliminates those closing risks while resolving the Cooley and FBZ claims and Gjura's Guaranty exposure.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), and (N). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory and rule predicates for the requested relief include 11 U.S.C. §§ 105(a), 363(b), 363(f), 363(m), and 1184, and Fed. R. Bankr. P. 2002, 6004, 9014, and 9019.

## BACKGROUND

3. The Debtor filed a voluntary Chapter 11 petition on April 8, 2026 and elected treatment under Subchapter V. The Debtor remains in possession under 11 U.S.C. §§ 1182(2) and 1184. Kimberly Ross Clayson is the Subchapter V Trustee.

4. The Debtor operates the restaurant and bar known as Prime 7 at 8635 Cooley Lake Road, Commerce Township, Michigan 48382 (the "Premises"). FBZ is the landlord under a Business Property Lease dated January 31, 2022 (the "Lease").

5. On or about September 19, 2022, Cooley sold the business assets to the Debtor. The parties executed a Promissory Note, Security Agreement, and Agreement for Reassignment of License dated September 19, 2022 (collectively, the "Security Documents"), together with related closing documents. Gjura executed a personal guaranty of the Debtor's obligations to Cooley (the "Guaranty").

6. Cooley asserts that the Debtor and Gjura defaulted on the Security Documents and Guaranty and commenced Sixth Judicial Circuit Court Case No. 25-215077-CB (the "Circuit Court Action"). The Debtor and Gjura dispute the amount, allowance, validity, secured status, priority, enforceability, fees, and other consequences of the obligations asserted by Cooley and FBZ. Nothing in this Motion is an admission except as expressly stated for settlement purposes.

7. The parties have reached agreement on the terms of the Settlement Agreement. Signatures are being obtained, and the Debtor will file the fully executed Settlement Agreement promptly after all signatures are obtained. This Motion requests approval of those agreed terms and the transactions contemplated by the Settlement Agreement.

**MATERIAL SETTLEMENT AND SALE TERMS**

8. The Debtor will sell the Business Assets to Cooley in settlement and satisfaction of the balance claimed due by Cooley under the Security Documents and Guaranty, stated for settlement purposes as $292,199.22, and the balance claimed by FBZ under the Lease of $24,000.00 less the $9,000.00 security deposit that FBZ will retain. In addition, Cooley will pay $49,283.00 at Closing as Net Purchase Proceeds. The Debtor and Gjura do not admit the validity, allowance, amount, secured status, priority, enforceability, fees, or other consequences of the asserted Cooley and FBZ obligations.

9. No additional interest, late fees, attorney fees, or costs of collection will be added to the $292,199.22 settlement amount after the effective date of the Settlement Agreement. At Closing, the transfer of the Business Assets, payment of the $49,283.00 Net Purchase Proceeds, and the releases required by the Settlement Agreement will constitute full and final satisfaction, discharge, and release of the settled Cooley and FBZ obligations. No deficiency or additional Lease amount will remain due from the Debtor or Gjura after Closing.

10. The parties acknowledge that the $49,283.00 Net Purchase Proceeds are proceeds of the Business Assets and, absent the Settlement Agreement, would be subject to Cooley's asserted secured claim and lien. As part of the

Settlement, Cooley expressly consents to the distribution of those proceeds and to the Carve-Out described in paragraph 2 of the Settlement Agreement. At Closing, the proceeds will be distributed as follows: (a) $20,000.00 to the IOLTA/client trust account of Kimberly Ross Clayson, Subchapter V Trustee, and $15,000.00 to the IOLTA/client trust account of Robert N. Bassel, Debtor's counsel, each to remain in escrow pending Court approval of fees and expenses; and (b) $14,283.00 to a newly established debtor-in-possession account maintained by the Debtor (the "Second DIP Account"). The Second DIP Account and all funds deposited into it remain property of the estate and are excluded from the Business Assets. Subject to Court approval, the initial $14,283.00 deposited into that account will be paid to Gjura as an administrative expense in consideration for his execution and performance of the covenant not to compete, his release, and his cooperation in the transaction. Any unused professional-fee escrow will be returned to the Debtor and deposited into the Second DIP Account unless otherwise ordered. Cooley's total cash-payment obligation under the Settlement Agreement will not exceed $49,283.00.

11. Contemporaneously with this Motion, the Debtor is filing its Motion to Dismiss Chapter 11 Case as required by paragraph 2 of the Settlement Agreement. The Debtor will not file a certificate of non-response, sign a

stipulated order, or otherwise request entry of an order dismissing this case until after (a) Cooley has paid the full $49,283.00 Net Purchase Proceeds in the manner required by paragraph 2 and all amounts that the Court requires to be paid or escrowed from those proceeds as a condition to dismissal have been paid or escrowed; (b) Cooley and FBZ have filed the UCC-3 terminations required by paragraph 4 and delivered evidence of filing to Debtor's counsel; and (c) the Circuit Court Action has been dismissed as provided in paragraph 11.

**BUSINESS ASSETS; PREMISES; CLOSING**

12. The "Business Assets" are all assets owned by the Debtor as of Closing, whether tangible or intangible and wherever located, including cash and deposit accounts, accounts receivable, inventory, furniture, fixtures, equipment and replacement equipment, general intangibles, and the Debtor's transferable interests in Class C License No. L-000403981 and SDM License No. L-000405791 (collectively, the "Liquor License"), subject to applicable law and approval of the Michigan Liquor Control Commission ("MLCC"). The Business Assets do not include financial records that the Debtor or its principal reasonably needs to retain for legal, tax, accounting, regulatory, or record-retention purposes, the Second DIP Account, or any funds held in the Second DIP Account.

13. Upon entry of the order approving the Sale, the parties shall consummate the sale of all Business Assets within fourteen (14) days, unless the parties agree otherwise in writing. At the sale closing, the parties will execute a bill of sale and documents reasonably necessary to reassign the Liquor License to Cooley, including an application to transfer the Liquor License to Cooley and to place the Liquor License in escrow pending approval of the Liquor License transfer by the Michigan Liquor Control Commission ("MLCC"). Paragraph 5 of the Settlement Agreement further provides that Cooley's owner, Fran Zefi, and his attorneys may inspect the Premises at the agreed times and that the Agreement is subject to Cooley's and FBZ's approval upon inspection that all Business Assets and equipment remain in the leased Premises. The Debtor requests waiver of the fourteen-day stay under Fed. R. Bankr. P. 6004(h) so the parties may consummate the Sale before expiration of the stay rather than being forced to wait until the outside date contemplated by the Settlement Agreement.

14. At Closing, the Debtor will surrender possession of the Premises to FBZ. FBZ will accept the surrender, and the Lease will terminate without any continuing rent, repair, restoration, holdover, or other lease obligation of the Debtor or Gjura. Cooley and FBZ will execute documents reasonably necessary to evidence full satisfaction and release of the Security

Documents, Guaranty, Lease claims, and all liens they assert. Cooley shall authorize and file a UCC-3 terminating Michigan UCC Financing Statement No. 20220921000539-7, and FBZ shall authorize and file a UCC-3 terminating Michigan UCC Financing Statement No. 20220921000739-5; each shall provide evidence of filing to Debtor's counsel within three business days after Closing.

15. No closing document may impose a material obligation on the Debtor or Gjura beyond the Settlement Agreement unless separately agreed in writing. The Sale is AS IS, WHERE IS, WITH ALL FAULTS, except for obligations expressly stated in the Settlement Agreement. From and after September 1, 2026 through Closing, the Debtor has no obligation to make any additional monthly payment to Cooley or rent payment to FBZ, and no such payment, rent, late charge, interest, attorney fee, or other charge will accrue against the Debtor or Gjura. The Debtor will cease operations no later than September 30, 2026, remove food and other perishables, and leave the Premises in broom-clean condition. Cooley's owner, Fran Zefi, and his attorneys may inspect the Premises at mutually agreeable times as provided in paragraph 5 of the Settlement Agreement, and the Agreement remains subject to Cooley's and FBZ's approval upon

inspection that all Business Assets and equipment remain in the leased Premises.

## GJURA COVENANT AND LIQUOR-LICENSE COOPERATION

16. Gjura is not represented by Debtor's counsel in his individual capacity. He acknowledges that Robert N. Bassel represents the Debtor only and that he has had the opportunity to consult separate counsel concerning the Settlement Agreement and his individual obligations under it.

17. Gjura will enter into a covenant not to compete effective only upon Closing and Cooley's payment of the full $49,283.00 Net Purchase Proceeds. The covenant will be limited solely to Gjura's ownership of a bar or restaurant business competing with the business operated at the Premises, for two (2) years and within three (3) miles of the Premises. Subject to Court approval, the initial $14,283.00 in the Second DIP Account will be paid to Gjura as an administrative expense in consideration for his execution and performance of the covenant, his release, and his cooperation in the transaction. Any form prepared by Cooley's counsel must be consistent with paragraph 6 of the Settlement Agreement, subject to prior review and approval by Gjura and Debtor's counsel, and may not impose any additional material restriction or obligation not expressly stated there.

18. The Debtor and Gjura will timely cooperate with actions reasonably required to transfer the Liquor License to Cooley. If the Debtor fails, after written demand and five (5) business days to cure, to execute and deliver instruments reasonably necessary to transfer the Liquor License pursuant to the September 19, 2022 Agreement for Reassignment of License, Cooley may execute and deliver the instruments reasonably required to complete the transfer pursuant to the power of attorney contained in that agreement. Upon completion of the Liquor License transfer and Closing, the Reassignment Agreement, any power of attorney or receivership provision contained in the Security Documents or related closing documents, and all enforcement rights arising from any asserted pre-Closing default will terminate.

## RELEASES AND STATE-COURT DISMISSAL

19. The mutual releases become effective only upon Closing and Cooley's payment of the full $49,283.00 Net Purchase Proceeds in the manner required by paragraph 2 of the Settlement Agreement. The Debtor and Gjura, on behalf of themselves and their respective successors and assigns, will release Cooley and FBZ and each of their respective current and former shareholders, members, managers, officers, directors, employees, agents, representatives, attorneys, accountants, professionals,

affiliates, predecessors, successors, assigns, and insurers (collectively, the "Creditor Released Parties"). Cooley and FBZ, on behalf of themselves and their respective successors and assigns, will release the Debtor and Gjura and each of their respective current and former shareholders, members, managers, officers, directors, employees, agents, representatives, attorneys, accountants, professionals, affiliates, predecessors, successors, assigns, and insurers (collectively, the "Debtor Released Parties"). The releases cover all claims the releasing parties have or might have, known or unknown, including but not limited to claims raised in the Circuit Court Action, this bankruptcy case, or otherwise arising out of the Security Documents, Guaranty, Lease, UCC filings, sale of the Business Assets, related 2022 closing documents, or any alleged defamation. Claims for breach of the Settlement Agreement and obligations concerning reassignment or transfer of the Liquor License under paragraph 7 are not released. If Closing does not occur, no release becomes effective. Each Released Party is an intended third-party beneficiary of paragraph 8 of the Settlement Agreement and may enforce the releases.

20. Without limiting the foregoing, Cooley and FBZ will fully release the Debtor and Gjura from any deficiency, personal-guaranty obligation, rent claim, attorney fee, cost of collection, late fee, interest, or other amount

arising from the settled documents or transactions. If Closing does not occur, the releases do not become effective.

21. Immediately upon Closing, Cooley, the Debtor, and Gjura will cause the Circuit Court Action to be dismissed with prejudice as to the Debtor and Gjura, without costs or attorney fees to any party, and will promptly provide Debtor's counsel with a file-stamped copy of the dismissal.

## SALE FREE AND CLEAR

22. Cooley and FBZ, as settlement counterparties, consent to the Sale and to the release of the liens and interests they assert. Their consent independently satisfies 11 U.S.C. § 363(f)(2) as to their interests. The Settlement Agreement requires their liens and claims to be satisfied and released at Closing.

23. Jaris Lending, LLC filed Claim No. 2 asserting a $68,680.00 all-property secured claim and identifying First Internet Bank of Indiana as the entity to whom the debt was owed at the time of the last transaction. Claim No. 2 identifies a UCC Financing Statement as the basis for perfection, but the proof-of-claim materials reviewed for the Debtor's filed Plan did not include an attached UCC-1 financing statement in favor of Jaris. The Debtor's July 5, 2026 certified Michigan UCC search disclosed no financing statement naming Jaris Lending, LLC or First Internet Bank

of Indiana as secured party against the Debtor. Gjura further denies entering into the alleged Jaris/First Internet Bank transaction, and the Debtor reserves objections concerning authorization, signature, ratification, perfection, allowance, amount, validity, and priority. Separate and apart from those disputes, the Debtor's filed Plan treated Claim No. 2 as fully unsecured under 11 U.S.C. § 506 because the value of the Debtor's assets was exhausted by the senior Cooley claim, leaving no value for any junior Jaris/First Internet interest. The Debtor requests a sale free and clear of the asserted Jaris/First Internet interest under 11 U.S.C. § 363(f)(4).

24. The same UCC search reflected Financing Statement No. 20230421000410-7 naming "Middesk, Inc. as Representative" and covering "All business assets." The Debtor scheduled Middesk at $0.00, and is unaware of any debtor-creditor relationship with Middesk. To the extent Middesk acts as representative for Jaris/First Internet Bank, the same perfection, authorization, allowance, priority, and collateral-value disputes apply. In any event, the Debtor contends that no collateral value remains for a junior Middesk interest after the senior Cooley claim. The Debtor therefore requests a sale free and clear of the asserted Middesk interest under 11 U.S.C. § 363(f)(4).

25. The $49,283.00 Net Purchase Proceeds are property of the estate and proceeds of the Business Assets. Cooley expressly consents to the Carve-Out and to the distributions required by paragraph 2 of the Settlement Agreement from its asserted secured claim and lien. The Debtor therefore requests approval of the consensual Carve-Out and distribution as part of the Rule 9019 settlement, including the $35,000.00 professional-fee escrows and the $14,283.00 deposit into the Second DIP Account. The Debtor does not seek to surcharge or compel a carve-out from any nonconsenting lienholder. The Debtor contends that the asserted Jaris/First Internet and Middesk interests are subject to bona fide dispute and have no collateral value after the senior Cooley claim. Upon Closing and payment of the Net Purchase Proceeds as required by the Settlement Agreement, Cooley and FBZ consent to having no further lien, security interest, or claim against the Net Purchase Proceeds or the Second DIP Account.

**CONDITIONS; TERMINATION**

26. The Settlement Agreement is contingent upon entry of a Bankruptcy Court order approving the Sale free and clear of all liens, claims, and encumbrances. Upon entry of that order, paragraph 4 of the Settlement Agreement requires the parties to consummate the sale of the

Business Assets within fourteen (14) days and, at the sale closing, to execute an application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval of the transfer.

27. If the Bankruptcy Court does not approve the settlement and Sale to Cooley or the sale closing otherwise does not occur, the Settlement Agreement terminates and is of no further force or effect; no release becomes effective; and no recital, settlement amount, or provision of the Settlement Agreement may be used as an admission against the Debtor, Gjura, or any party. The parties retain the claims, defenses, rights, and remedies they had immediately before execution of the Settlement Agreement, subject to applicable bankruptcy law and orders of this Court. If Closing occurs with the Liquor License transfer application executed and the Liquor License placed in escrow pending MLCC approval, a later denial or failure to obtain MLCC approval does not unwind the completed transfer of the other Business Assets, Lease termination, releases, lien terminations, or state-court dismissal; the parties remain obligated to cooperate concerning the Liquor License as provided in the Settlement Agreement and Sale Order. Either party may terminate the Settlement Agreement by written notice if an order approving the transaction

substantially on the agreed terms is not entered within sixty (60) days after the date of the Settlement Agreement.

## RELIEF REQUESTED

28. The Debtor requests entry of the proposed order: (a) approving the Settlement Agreement under Rule 9019; (b) authorizing the Sale under § 363(b); (c) authorizing the Sale free and clear under § 363(f); (d) approving the consensual Carve-Out and distribution described in paragraph 2 of the Settlement Agreement and authorizing the Closing distributions of $20,000.00 to the Subchapter V Trustee's trust account, $15,000.00 to Debtor's counsel's trust account, and $14,283.00 to the Second DIP Account; (e) recognizing that the Net Purchase Proceeds and Second DIP Account are estate property until disbursed pursuant to Court order and approving, subject to the evidentiary record, payment of the initial $14,283.00 to Gjura as an administrative expense for the covenant not to compete, release, and cooperation required by the Settlement Agreement; (f) approving the consensual Lease termination and Liquor License transfer procedures; (g) approving the expanded mutual releases, including the Creditor Released Parties and Debtor Released Parties, the release of alleged defamation claims, and the intended third-party-beneficiary enforcement rights stated in paragraph 8 of the Settlement Agreement; (h)

approving the Circuit Court Action dismissal terms; (i) finding, upon the evidence presented, that Cooley is a good-faith purchaser under § 363(m); (j) authorizing the parties to execute closing documents consistent with the Settlement Agreement and Sale Order; (k) waiving the stay under Rule 6004(h); and (l) granting related relief.

## CONCURRENCE

29. Pursuant to L.B.R. 9014-1(h), Debtor's counsel sought concurrence from counsel for Cooley and FBZ, the Subchapter V Trustee, and the Office of the United States Trustee.

## NOTICE

30. The Debtor will serve this Motion and the hearing notice on all creditors and parties in interestall known holders of liens or interests in the Business Assets and all other entities entitled to notice under Fed. R. Bankr. P. 2002 and 6004. The Debtor submits that such notice is adequate under the circumstances.

WHEREFORE, the Debtor respectfully requests entry of an order substantially in the form attached as Exhibit 1 granting the relief described above and such other relief as is just and proper.

Dated: September 22, 2026

/s/ Robert N. Bassel
Robert N. Bassel (P48420)
Attorney for Debtor in Possession
P.O. Box T
Clinton, MI 49236
248.677.1234
bbassel@gmail.com

**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN, FLINT DIVISION**

| | |
|---|---|
| In re: | Case No. 26-30869 |
| THE DOCK ON COOLEY LLC, | Chapter 11 (Subchapter V) |
| Debtor. | Hon. Joel D. Applebaum |

/

**ORDER APPROVING SETTLEMENT AND AUTHORIZING SALE OF BUSINESS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

This matter is before the Court on the Debtor's Motion for Entry of an Order (I) Approving Settlement Under Fed. R. Bankr. P. 9019; (II) Authorizing Sale of Business Assets to Cooley Lake Bar & Grill, Inc. Free and Clear of Liens, Claims, Encumbrances, and Interests; (III) Approving Lease Termination and Liquor-License Transfer; and (IV) Granting Related Relief (the "Motion"). The Court has reviewed the Motion, the Settlement Agreement, the record, and any objections and responses. Based on the record, the Court finds and orders as follows:

**FINDINGS**

A. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), and (N).

B. Notice of the Motion and hearing was proper, timely, adequate, and sufficient under the Bankruptcy Code, Fed. R. Bankr. P. 2002, 6004, 9014, and 9019, and was reasonably calculated to apprise creditors and holders of asserted liens and interests of the relief requested.

C. The Settlement and Sale are the product of arm's-length negotiations. The consideration and other terms are fair and reasonable under the circumstances and reflect a good and sound exercise of the Debtor's business judgment. Before the Petition Date, the business was marketed for several months without an offer producing a superior net economic result, and a later informal $290,000.00 equity offer was not a free-and-clear asset offer and would have required Gjura to contribute money to close after the contemplated broker commission and closing obligations.

D. The Settlement and Sale provide substantial value to the Debtor and the estate. The transaction satisfies and releases the Cooley and FBZ claims and liens, releases the Gjura Guaranty and asserted deficiencies, terminates the Lease, resolves the Circuit Court Action, avoids the expense, delay, and uncertainty of continued litigation, and provides $49,283.00 in Net Purchase Proceeds. Cooley expressly consents to the Carve-Out and distribution described in paragraph 2 of the Settlement Agreement, including $35,000.00 for professional-fee escrows and $14,283.00 to the Second DIP Account. The Settlement also provides broad mutual releases in favor of the Creditor Released Parties and Debtor Released Parties identified in paragraph 8, including claims for alleged defamation, with each Released Party made an intended third-party beneficiary entitled to enforce the releases.

E. The Debtor has demonstrated a good and sound business reason for the Sale under 11 U.S.C. § 363(b). The Settlement is fair and equitable and in the best interests of the estate under Fed. R. Bankr. P. 9019. Cooley's consensual Carve-Out and the proposed use of the initial $14,283.00 deposited into the Second DIP Account to compensate Gjura, are integral to the Settlement and facilitate Gjura's covenant not to compete, release, and cooperation required to close the transaction. The record does not establish a higher or better realizable transaction available to the estate.

F. Cooley and FBZ consent to the Sale free and clear of their asserted interests within the meaning of 11 U.S.C. § 363(f)(2). The asserted Jaris/First Internet and Middesk interests are subject to bona fide disputes within the meaning of 11 U.S.C. § 363(f)(4), including disputes concerning perfection, authorization, the underlying obligation, allowance, priority, and collateral value. The July 5, 2026 Michigan UCC search disclosed no financing statement naming Jaris Lending, LLC or First Internet Bank of Indiana as secured party; Middesk is scheduled at $0.00 and the Debtor is unaware of an underlying debtor-creditor relationship with Middesk; and the Debtor contends that no value remains for either asserted junior interest after the senior Cooley claim.

G. Upon consummation of the Sale under paragraph 4 of the Settlement Agreement, Cooley will receive the Debtor's right, title, and interest in all Business Assets free and clear of liens, claims, encumbrances, and interests to the fullest extent permitted by 11 U.S.C. § 363(f). The Business Assets include all assets and property owned by the Debtor as of Closing, tangible and intangible, except the financial records that the Debtor or its principal reasonably needs to retain for legal, tax, accounting, regulatory,

or record-retention purposes, the Second DIP Account, and all funds held in the Second DIP Account.

H. The $49,283.00 Net Purchase Proceeds are proceeds of the Business Assets and property of the estate. Cooley has expressly consented to the Carve-Out and to the distributions specified in paragraph 2 of the Settlement Agreement. The $35,000.00 professional-fee component shall remain escrowed pending allowance of the respective fees and expenses. The Second DIP Account and all funds deposited into it remain estate property and are excluded from the Business Assets. The initial $14,283.00 deposited into the Second DIP Account may be paid to Gjura as an administrative expense for his covenant not to compete, release, and cooperation. Any unused professional-fee escrow shall be returned to the Debtor and deposited into the Second DIP Account unless otherwise ordered.

I. The negotiation and proposed consummation of the Sale are non-collusive and in good faith. Cooley is a good-faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to the protections of that section.

J. There is no basis on the present record to avoid the Sale under 11 U.S.C. § 363(n). Cause exists to waive the stay provided by Fed. R. Bankr. P. 6004(h) because paragraph 4 of the Settlement Agreement requires the parties to consummate the Sale within fourteen (14) days after entry of the Sale Order. At the sale closing, the parties will execute an application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval. Closing may occur before final MLCC approval, and a later denial or failure to obtain approval will not unwind the completed transfer of the other Business Assets or the other completed settlement transactions, subject to the continuing Liquor License obligations in the Settlement Agreement and this Order.

**ORDER**

1. The Motion is GRANTED as provided in this Order. Any objections not resolved, withdrawn, or expressly preserved by this Order are overruled.

2. The Settlement Agreement, including the mutual releases and the transactions contemplated by it, is approved under Fed. R. Bankr. P. 9019. This Order shall be construed consistently with the Settlement Agreement; no provision of this Order materially modifies the Parties' obligations except as expressly stated and approved after notice.

3. The Debtor is authorized under 11 U.S.C. § 363(b) to sell the Business Assets to Cooley on the terms of the Settlement Agreement. The Business Assets have the meaning stated in paragraph 2 of the Settlement Agreement and include all assets owned by the Debtor as of Closing, whether tangible or intangible and wherever located, including cash and deposit accounts, accounts receivable, inventory, furniture, fixtures, equipment and replacement equipment, general intangibles, and the Debtor's transferable interests in Class C License No. L-000403981 and SDM License No. L-000405791 (collectively, the "Liquor License"), subject to applicable law and MLCC approval. The Business Assets do not include financial records that the Debtor or its principal reasonably needs to retain for legal, tax, accounting, regulatory, or record-retention purposes, the Second DIP Account, or any funds held in the Second DIP Account. The parties are authorized to execute the documents reasonably necessary to reassign the Liquor License to Cooley, including at the sale closing an application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval of the transfer.

4. At Closing, Cooley shall pay the $49,283.00 Net Purchase Proceeds directly as follows: (a) $20,000.00 to the IOLTA/client trust account of Kimberly Ross Clayson, the Subchapter V Trustee, to be held in escrow pending Court approval of the Trustee's fees and expenses; (b) $15,000.00 to the IOLTA/client trust account of Robert N. Bassel, Debtor's counsel, to be held in escrow pending Court approval of his fees and expenses; and (c) $14,283.00 to the Second DIP Account maintained by the Debtor for the benefit of Gjura. The Net Purchase Proceeds are proceeds of the Business Assets and property of the estate. Cooley's consensual Carve-Out and the foregoing distribution are APPROVED. Cooley shall have no cash-payment obligation under the Settlement Agreement in excess of $49,283.00.

5. The professional-fee amounts funded under paragraph 4 shall remain in the respective IOLTA/client trust accounts until disbursed pursuant to Court order, and nothing in this Order authorizes payment of professional compensation before allowance. Any portion of either professional-fee escrow not approved for payment to the intended professional shall be returned to the Debtor and deposited into the Second DIP Account unless otherwise ordered. The Second DIP Account and all funds deposited into it remain property of the Debtor's bankruptcy estate and are excluded from the Business Assets. The initial $14,283.00 deposited into the Second DIP Account is APPROVED for payment to Gjura as an administrative expense in consideration for his execution and performance of the covenant not to compete, his release, and his cooperation in the transaction, all of which

are necessary to close the transaction and benefit the estate. Upon Closing and payment of the $49,283.00 as required by the Settlement Agreement, Cooley and FBZ shall have no further lien, security interest, or claim against the Net Purchase Proceeds or the Second DIP Account.

6. At Closing, the transfer of the Business Assets and the payments and releases required by the Settlement Agreement shall constitute full and final satisfaction, discharge, and release of the obligations of the Debtor and Gjura under the Security Documents, Guaranty, related 2022 closing documents, and all amounts claimed by FBZ under the Lease. No deficiency or further Lease amount shall be due from the Debtor or Gjura after Closing.

7. The Sale is authorized free and clear of the liens, claims, encumbrances, and interests of Cooley and FBZ under 11 U.S.C. § 363(f)(2). Those interests are satisfied and released at Closing and shall not survive against the transferred Business Assets. Cooley and FBZ shall execute documents reasonably necessary to evidence those releases. Cooley shall file a UCC-3 terminating Michigan UCC Financing Statement No. 20220921000539-7, and FBZ shall file a UCC-3 terminating Michigan UCC Financing Statement No. 20220921000739-5; each shall provide evidence of filing to Debtor's counsel within three (3) business days after Closing.

8. The Sale is authorized free and clear of the disputed interests asserted by Jaris Lending, LLC / First Internet Bank of Indiana and Middesk, Inc. as Representative under 11 U.S.C. § 363(f)(4). Any interest ultimately determined to be valid shall attach, if at all, to the Net Purchase Proceeds with the same validity, priority, and extent it had in the Business Assets, subject to the Settlement Agreement, the Court-approved Carve-Out, the Debtor's objections, and further order of the Court. Any timely request for adequate protection shall be determined under 11 U.S.C. § 363(e). Nothing in this Order determines the allowance, validity, perfection, or priority of any disputed Jaris/First Internet or Middesk claim except to authorize the Sale free and clear under § 363(f)(4).

9. The Sale is AS IS, WHERE IS, WITH ALL FAULTS, except for obligations expressly stated in the Settlement Agreement. The inspection and approval condition in paragraph 5 of the Settlement Agreement remains applicable according to its terms.

10. The Debtor, Cooley, FBZ, Gjura, and their authorized representatives may execute and deliver the bill of sale, the application and other Liquor License transfer and escrow documents, UCC termination documents, and other instruments reasonably necessary to consummate

the transactions, provided no closing document materially alters the obligations stated in the Settlement Agreement without a written agreement signed by all affected Parties and, if required, further Court approval.

11. At Closing, the Debtor shall surrender possession of the Premises to FBZ, FBZ shall accept the surrender, and the Lease shall terminate without any continuing rent, repair, restoration, holdover, or other lease obligation of the Debtor or Gjura.

12. Effective only upon Closing and Cooley's payment of the full $49,283.00 Net Purchase Proceeds in the manner required by paragraph 2 of the Settlement Agreement, the releases in paragraph 8 of the Settlement Agreement are APPROVED and effective according to their terms. The "Creditor Released Parties" are Cooley and FBZ and each of their respective current and former shareholders, members, managers, officers, directors, employees, agents, representatives, attorneys, accountants, professionals, affiliates, predecessors, successors, assigns, and insurers. The "Debtor Released Parties" are the Debtor and Gjura and each of their respective current and former shareholders, members, managers, officers, directors, employees, agents, representatives, attorneys, accountants, professionals, affiliates, predecessors, successors, assigns, and insurers. The releases include all claims the releasing parties have or might have, known or unknown, including claims raised in the Circuit Court Action, this bankruptcy case, claims arising out of the Security Documents, Guaranty, Lease, UCC filings, sale of the Business Assets, related 2022 closing documents, and any alleged defamation. Claims for breach of the Settlement Agreement and obligations concerning reassignment or transfer of the Liquor License under paragraph 7 are not released. Without limiting the foregoing, Cooley and FBZ release the Debtor and Gjura from any deficiency, Guaranty obligation, rent claim, attorney fee, collection cost, late fee, interest, or other amount arising from the settled documents and transactions. Each Released Party is an intended third-party beneficiary of the releases and may enforce them. If Closing does not occur, the releases do not become effective.

13. Immediately upon Closing, Cooley, the Debtor, and Gjura shall cause Sixth Judicial Circuit Court Case No. 25-215077-CB to be dismissed with prejudice as to the Debtor and Gjura, without costs or attorney fees to any party.

14. The Court approves the two-year, three-mile covenant not to compete described in the Settlement Agreement. The covenant shall be

limited solely to Gjura's ownership of a bar or restaurant business competing with the business operated at the Premises, shall become effective only upon Closing and Cooley's payment of the full $49,283.00 Net Purchase Proceeds, shall be in a form consistent with paragraph 6 of the Settlement Agreement and subject to prior review and approval by Gjura and Debtor's counsel, and shall not impose any additional material restriction or obligation not expressly stated in that paragraph.

15. Nothing in this Order alters the termination provisions in paragraph 12 of the Settlement Agreement. If the Bankruptcy Court does not approve the settlement and Sale to Cooley or Closing otherwise does not occur, the consequences stated in paragraph 12 shall apply. If Closing occurs with the Liquor License transfer application executed and the Liquor License placed in escrow pending MLCC approval, a later denial or failure to obtain MLCC approval shall not unwind the completed transfer of the other Business Assets, Lease termination, releases, lien terminations, or state-court dismissal; the parties shall continue to perform the surviving Liquor License obligations under the Settlement Agreement and this Order.

16. The fourteen-day stay under Fed. R. Bankr. P. 6004(h) is WAIVED. The parties may consummate the Sale immediately after entry of this Order and need not wait fourteen days after entry. Consistent with paragraph 4 of the Settlement Agreement, the sale closing shall occur within fourteen (14) days after entry of this Order unless the parties agree otherwise in writing. At the sale closing, the parties shall execute an application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval of the transfer.

17. This Order and the Settlement Agreement are binding on the Debtor, Cooley, FBZ, Gjura, and all creditors and parties in interest to the extent provided by applicable law and notice.

18. The Settlement Agreement may be amended only by a written agreement signed by all Parties. A nonmaterial written amendment may be implemented without further order if it is consistent with this Order and does not materially adversely affect the estate or a nonconsenting party in interest. Any material adverse modification requires further Court approval on appropriate notice.

19. The Court retains jurisdiction, to the extent permitted by law, to interpret and enforce this Order and the Settlement Agreement and to resolve disputes concerning Closing and the releases and lien terminations required by them.

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN, FLINT DIVISION**

| | |
|---|---|
| In re: | Case No. 26-30869 |
| THE DOCK ON COOLEY LLC, | Chapter 11 (Subchapter V) |
| Debtor. | Hon. Joel D. Applebaum |

/

**NOTICE OF DEBTOR'S MOTION TO APPROVE SETTLEMENT AND SELL BUSINESS ASSETS FREE AND CLEAR**

PLEASE TAKE NOTICE that The Dock on Cooley LLC has filed a motion seeking approval of a settlement with Cooley Lake Bar & Grill, Inc., FBZ Enterprises, LLC, and Perparim Gjura and authorization to sell the Debtor's Business Assets to Cooley free and clear of liens, claims, encumbrances, and interests.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the Court to approve the Settlement Agreement and authorize the sale of all of the Debtor's Business Assets to Cooley Lake Bar & Grill, Inc. free and clear of liens, claims, encumbrances, and interests, together with the related relief requested in the Motion, or if you want the Court to consider your views on the Motion to Approve Settlement and Sell Business Assets Free and Clear, within twenty-one (21) days after service of this Notice, you or your attorney must:

1. File with the Court a written response or answer explaining your position. The response or answer must comply with Fed. R. Civ. P. 8(b), (c), and (e), as applicable.

   United States Bankruptcy Court
   Eastern District of Michigan
   226 West Second Street
   Flint, Michigan 48502

   If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it within the twenty-one (21) day response period stated above. All attorneys are required to file pleadings electronically.

   You must also send a copy to:

Robert N. Bassel (P48420)
Attorney for Debtor in Possession
P.O. Box T
Clinton, Michigan 49236
248.677.1234
bbassel@gmail.com

and to all other parties entitled to service under the Bankruptcy Rules and the Local Bankruptcy Rules.

2. If a response or answer is timely filed and served, the Clerk will schedule a hearing on the Motion and you will be served with notice of the date, time, and location of the hearing.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

Dated: September 22, 2026
/s/ Robert N. Bassel
Robert N. Bassel (P48420)
Attorney for Debtor in Possession
P.O. Box T
Clinton, MI 49236
248.677.1234
bbassel@gmail.com


26-30869-jda Doc 102 Filed 09/22/26 Entered 09/22/26 09:33:33 Page 29 of 39

**EXHIBIT 3**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN, FLINT DIVISION**

In re:
THE DOCK ON COOLEY LLC,
Debtor.

Case No. 26-30869
Chapter 11 (Subchapter V)
Hon. Joel D. Applebaum

/

/

**BRIEF IN SUPPORT OF DEBTOR'S MOTION TO APPROVE SETTLEMENT AND SELL BUSINESS ASSETS FREE AND CLEAR**

**ARGUMENT**

Section 363(b)(1) permits a debtor in possession, after notice and a hearing, to sell property of the estate outside the ordinary course when a good and sound business reason supports the transaction. Stephens Indus., Inc. v. McClung, 789 F.2d 386, 389-91 (6th Cir. 1986) (citing In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983)). The Debtor's business decision is entitled to deference unless it is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim, or caprice. In re 160 Royal Palm, LLC, 600 B.R. 119 (S.D. Fla. 2019) (quoting In re SW Boston Hotel Venture, LLC, 2010 WL 3396863, at *3 (Bankr. D. Mass. Aug. 27, 2010)). Rule 9019 separately permits approval of a compromise after notice and a hearing. The Court should evaluate the Sale and Settlement on the actual economic record, including the claims and

liens released, the Lease termination, the avoided litigation expense, and the separate personal obligations undertaken by Gjura.

The proposed transaction provides a sound business result. The estate receives satisfaction and release of the Cooley and FBZ claims and liens, termination of the Lease, dismissal of the Circuit Court Action, elimination of Gjura's Guaranty exposure as part of the global settlement, and $49,283.00 in Net Purchase Proceeds. The Debtor and Gjura had marketed the business for several months before the Petition Date without obtaining an offer that produced a superior net economic result. A later informal $290,000.00 offer was for Gjura's equity interest rather than for the Debtor's assets free and clear, contemplated an approximately $29,000.00 broker commission, and would have required additional cash to close. Against that market history, the Settlement provides a more certain, executable transaction. Cooley's $49,283.00 cash payment is expressly treated as proceeds of the Business Assets, and Cooley consents to the Carve-Out and distribution described in paragraph 2 of the Settlement Agreement to fund the professional-fee escrows and the Second DIP Account.

The Carve-Out is consensual. The Sixth Circuit has enforced a clear contractual carve-out permitting bankruptcy professionals to be paid from

collateral subject to a secured creditor's lien. E. Coast Miner LLC v. Nixon Peabody LLP (In re Licking River Mining, LLC), 911 F.3d 806, 810-13 (6th Cir. 2018). Here, Cooley expressly consents to the Carve-Out and distribution described in paragraph 2 of the Settlement Agreement. At Closing, $20,000.00 will be escrowed for the Subchapter V Trustee and $15,000.00 for Debtor's counsel, subject to Court allowance, and $14,283.00 will be deposited into the Second DIP Account. Any unused professional-fee escrow will return to the Debtor and be deposited into the Second DIP Account unless otherwise ordered. The Debtor does not seek a compelled carve-out from a nonconsenting lienholder; it seeks approval of Cooley's negotiated concession as part of the Rule 9019 settlement.

Section 363(f) is written in the disjunctive. In re Wolverine Radio Co., 930 F.2d 1132, 1147 n.24 (6th Cir. 1991). Cooley and FBZ consent to the Sale and release their asserted interests, satisfying § 363(f)(2). The Jaris/First Internet and Middesk interests are subject to bona fide disputes supporting relief under § 363(f)(4). Claim No. 2 asserts a $68,680.00 all-property secured claim, but the filed Plan records that the July 5, 2026 Michigan UCC search disclosed no financing statement naming Jaris Lending, LLC or First Internet Bank of Indiana as secured party; the Debtor also disputes authorization, signature, ratification, perfection,

allowance, and priority. The Plan further treated the asserted Jaris/First Internet lien as wholly unsupported by collateral value because the senior Cooley claim exhausted the Debtor's asset value. Middesk is listed on the UCC search as "Middesk, Inc. as Representative," but the Debtor scheduled Middesk at $0.00, is unaware of an underlying debtor-creditor relationship, and has identified no allowed claim supporting that filing. The Debtor likewise contends no collateral value remains for a junior Middesk interest. Any timely request for adequate protection may be determined under § 363(e).

Rule 9019 requires an informed and independent judgment that the compromise is fair and equitable, considering the probability of success in litigation, collection issues, complexity, expense and delay, and the paramount interest of creditors. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968). The Settlement resolves multiple contested claims, the Lease and Guaranty, asserted liens, pending state-court litigation, and related claims in a single Closing. The negotiated release extends to the parties' specified current and former officers, directors, members, managers, employees, agents, representatives, attorneys, accountants, professionals, affiliates, predecessors, successors, assigns, and insurers, includes any alleged defamation claims, and makes

each Released Party an intended third-party beneficiary entitled to enforce the release.

The record should also support a finding that Cooley is a good-faith purchaser under § 363(m). The transaction was negotiated as a resolution of contested disputes, is fully disclosed on notice, requires Court approval, and contains no evidence of collusion or an attempt to take unfair advantage of any other party. See Made in Detroit, Inc., 414 F.3d 576, 581 (6th Cir. 2005); 255 Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. P'ship), 100 F.3d 1214, 1218 (6th Cir. 1996) (a showing of lack of good faith requires fraud or collusion between the purchaser and the seller, or conduct that constitutes an attempt to take grossly unfair advantage of other bidders). Waiver of Rule 6004(h) is appropriate because paragraph 4 of the Settlement Agreement requires the parties to consummate the sale of the Business Assets within fourteen (14) days after entry of the Sale Order. Waiver permits the parties to close during that period rather than forcing them to wait for expiration of a separate fourteen-day stay. At the sale closing, the parties will execute the application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval of the transfer.

For these reasons, the Court should approve the Settlement Agreement and Sale, including the consensual Carve-Out and the Closing distributions required by paragraph 2, if the evidentiary record supports the requested findings.

Dated: September 22, 2026

/s/ Robert N. Bassel
Robert N. Bassel (P48420)
Attorney for Debtor in Possession
P.O. Box T
Clinton, MI 49236
248.677.1234
bbassel@gmail.com

**EXHIBIT 4**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN, FLINT DIVISION**

| | |
|---|---|
| In re:<br>THE DOCK ON COOLEY LLC,<br>Debtor. | Case No. 26-30869<br>Chapter 11<br>(Subchapter V)<br>Hon. Joel D. Applebaum |

/

## CERTIFICATE OF SERVICE

I certify that on 9.22.2026, I electronically filed the foregoing Motion and its exhibits with the Clerk of the Court using the ECF system, which will send notice to registered ECF participants, and I served the Motion and Notice by first-class mail or other method authorized by the Bankruptcy Rules on all creditors and parties in interest on the matrix, including all known entities asserting liens or interests in the Business Assets (or might assert liens), including Jaris Lending, LLC/First Internet Bank of Indiana, Middesk, Inc., Cooley Lake Bar & Grill, Inc., and FBZ Enterprises, LLC, and all other parties entitled to notice under Fed. R. Bankr. P. 2002 and 6004.

Dated: 9.22.2026

/s/ Robert N. Bassel
Robert N. Bassel (P48420)
Attorney for Debtor in Possession
P.O. Box T
Clinton, MI 49236
248.677.1234
bbassel@gmail.com

## EXHIBIT 5

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN, FLINT DIVISION

In re:
THE DOCK ON COOLEY LLC,
Debtor.

Case No. 26-30869
Chapter 11
(Subchapter V)
Hon. Joel D. Applebaum

/

## DECLARATION OF PERPARIM GJURA IN SUPPORT OF SALE AND SETTLEMENT MOTION

I, Perparim Gjura, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am the principal and authorized representative of The Dock on Cooley LLC. I have personal knowledge of the Debtor's business, the Premises, and the negotiations concerning the proposed settlement and Sale.

2. The Debtor, Cooley, FBZ, and I have disputed obligations arising from the 2022 sale transaction, Security Documents, Lease, Guaranty, claimed defaults, liens, and related state-court and bankruptcy proceedings. The Debtor and I do not admit the amount, validity, secured status, priority, or enforceability of those claims except as compromised in the Settlement Agreement.

3. The Settlement Agreement uses $292,199.22 solely as a settlement amount for the balance claimed by Cooley and resolves FBZ's claimed $24,000.00 Lease balance with FBZ retaining the $9,000.00 security deposit. The Debtor and I do not admit the amount, validity, secured status, priority, or enforceability of those asserted claims.

4. Cooley agreed to pay $49,283.00 at Closing as Net Purchase Proceeds of the Business Assets. The Settlement Agreement states that those funds are proceeds of the Business Assets and, absent the Settlement, would be subject to Cooley's asserted secured claim and lien. Cooley consents to the Carve-Out and distribution described in paragraph 2 of the Settlement Agreement, including $35,000.00 for professional-fee escrows and $14,283.00 to be deposited into a Second DIP Account maintained by the Debtor.

5. At Closing, Cooley will pay $20,000.00 to the IOLTA/client trust account of Kimberly Ross Clayson, the Subchapter V Trustee, $15,000.00 to

the IOLTA/client trust account of Robert N. Bassel, Debtor's counsel, and $14,283.00 to the Second DIP Account. I understand that the professional-fee amounts will remain escrowed until the Court allows and authorizes payment of the respective fees and expenses, and that any unused amount will be returned to the Debtor and deposited into the Second DIP Account unless otherwise ordered. I also understand that the Second DIP Account and all funds in it remain property of the Debtor's bankruptcy estate and are excluded from the Business Assets.

6. Subject to Court approval, the initial $14,283.00 deposited into the Second DIP Account will be paid to me as an administrative expense in consideration for my execution and performance of the two-year, three-mile covenant not to compete described in paragraph 6 of the Settlement Agreement, my release, and my cooperation necessary to effectuate the transaction. The Sale otherwise calls for transfer of all assets owned by the Debtor as of Closing, tangible and intangible and wherever located, except financial records that the Debtor or I reasonably need to retain and the Second DIP Account and its funds. Upon entry of the Sale Order, the parties are to consummate the sale within fourteen (14) days. At Closing, the parties will execute an application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval, the Debtor will surrender the Premises to FBZ, the Lease will terminate, and the releases in paragraph 8 will become effective upon Cooley's payment of the full $49,283.00 Net Purchase Proceeds.

7. Before the bankruptcy filing, the Debtor and I marketed the business for several months. We did not receive an offer that would have produced a better net economic result than the proposed Settlement after taking account of the liens, claims, transaction costs, and closing obligations.

8. More recently, I received an informal offer of approximately $290,000.00 for my equity interest in the Debtor. That was not a binding offer to purchase the Debtor's assets free and clear of liens. It contemplated an approximately $29,000.00 broker commission and, even if the transaction could have closed, I would have had to contribute at least approximately $14,100.00 of my own funds at closing based on the known closing obligations, and potentially substantially more if disputed additional Cooley fees or other amounts were required to be paid. The lien issues asserted by Jaris and others also created a closing risk for that transaction.

9. In my judgment, the Settlement and Sale provide a more certain and economical resolution for the Debtor than continued litigation, continued

operation under the present disputes, or the informal equity transaction described above. The Carve-Out, the $35,000.00 professional-fee escrows, and the proposed $14,283.00 administrative payment to me are part of the negotiated overall resolution. My covenant not to compete, release, and cooperation are necessary to close the transaction and are the consideration for the proposed administrative payment.

10. I understand that Robert N. Bassel represents the Debtor, not me individually. I have had the opportunity to consult separate counsel regarding my personal release, cooperation obligations, the covenant not to compete, and the proposed administrative payment to me under the Settlement Agreement.

**VERIFIED UNDER PENALTY OF PERJURY**

Executed on: 9.22.2026.

/s/ Perparim Gjura