**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

| | |
|---|---|
| In re:<br>THE DOCK ON COOLEY LLC,<br>Debtor.<br>/ | Case No. 26-30869<br>Chapter 11 (Subchapter V)<br>Hon. Joel D. Applebaum |

# ORDER APPROVING SETTLEMENT AND AUTHORIZING SALE OF BUSINESS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS

This matter is before the Court on the Debtor's Motion for Entry of an Order (I) Approving Settlement Under Fed. R. Bankr. P. 9019; (II) Authorizing Sale of Business Assets to Cooley Lake Bar & Grill, Inc. Free and Clear of Liens, Claims, Encumbrances, and Interests; (III) Approving Lease Termination and Liquor-License Transfer; and (IV) Granting Related Relief (the "Motion"). The Court has reviewed the Motion, the Settlement Agreement, the record, and any objections and responses. Based on the record, the Court finds and orders as follows:

## FINDINGS

A. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), and (N).

B. Notice of the Motion and hearing was proper, timely, adequate, and sufficient under the Bankruptcy Code, Fed. R. Bankr. P. 2002, 6004, 9014, and 9019, and was reasonably calculated to apprise creditors and holders of asserted liens and interests of the relief requested.

C. The Settlement and Sale are the product of arm's-length negotiations. The consideration and other terms are fair and reasonable under the circumstances and reflect a good and sound exercise of the Debtor's business judgment. Before the Petition Date, the business was marketed for several months without an offer producing a superior net economic result, and a later informal $290,000.00 equity offer was not a free-and-clear asset offer and would have required Gjura to contribute money to close after the contemplated broker commission and closing obligations.

D. The Settlement and Sale provide substantial value to the Debtor and the estate. The transaction satisfies and releases the Cooley and FBZ

claims and liens, releases the Gjura Guaranty and asserted deficiencies, terminates the Lease, resolves the Circuit Court Action, avoids the expense, delay, and uncertainty of continued litigation, and provides $49,283.00 in Net Purchase Proceeds. Cooley expressly consents to the Carve-Out and distribution described in paragraph 2 of the Settlement Agreement, including $35,000.00 for professional-fee escrows and $14,283.00 to the Second DIP Account. The Settlement also provides broad mutual releases in favor of the Creditor Released Parties and Debtor Released Parties identified in paragraph 8, including claims for alleged defamation, with each Released Party made an intended third-party beneficiary entitled to enforce the releases.

E. The Debtor has demonstrated a good and sound business reason for the Sale under 11 U.S.C. § 363(b). The Settlement is fair and equitable and in the best interests of the estate under Fed. R. Bankr. P. 9019. Cooley's consensual Carve-Out and the proposed use of the initial $14,283.00 deposited into the Second DIP Account to compensate Gjura, are integral to the Settlement and facilitate Gjura's covenant not to compete, release, and cooperation required to close the transaction. The record does not establish a higher or better realizable transaction available to the estate.

F. Cooley and FBZ consent to the Sale free and clear of their asserted interests within the meaning of 11 U.S.C. § 363(f)(2). The asserted Jaris/First Internet and Middesk interests are subject to bona fide disputes within the meaning of 11 U.S.C. § 363(f)(4), including disputes concerning perfection, authorization, the underlying obligation, allowance, priority, and collateral value. The July 5, 2026 Michigan UCC search disclosed no financing statement naming Jaris Lending, LLC or First Internet Bank of Indiana as secured party; Middesk is scheduled at $0.00 and the Debtor is unaware of an underlying debtor-creditor relationship with Middesk; and the Debtor contends that no value remains for either asserted junior interest after the senior Cooley claim.

G. Upon consummation of the Sale under paragraph 4 of the Settlement Agreement, Cooley will receive the Debtor's right, title, and interest in all Business Assets free and clear of liens, claims, encumbrances, and interests to the fullest extent permitted by 11 U.S.C. § 363(f). The Business Assets include all assets and property owned by the Debtor as of Closing, tangible and intangible, except the financial records that the Debtor or its principal reasonably needs to retain for legal, tax, accounting, regulatory, or record-retention purposes, the Second DIP Account, and all funds held in the Second DIP Account.

H. The $49,283.00 Net Purchase Proceeds are proceeds of the Business Assets and property of the estate. Cooley has expressly consented to the Carve-Out and to the distributions specified in paragraph 2 of the Settlement Agreement. The $35,000.00 professional-fee component shall remain escrowed pending allowance of the respective fees and expenses. The Second DIP Account and all funds deposited into it remain estate property and are excluded from the Business Assets. The initial $14,283.00 deposited into the Second DIP Account may be paid to Gjura as an administrative expense for his covenant not to compete, release, and cooperation. Any unused professional-fee escrow shall be returned to the Debtor and deposited into the Second DIP Account unless otherwise ordered.

I. The negotiation and proposed consummation of the Sale are non-collusive and in good faith. Cooley is a good-faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to the protections of that section.

J. There is no basis on the present record to avoid the Sale under 11 U.S.C. § 363(n). Cause exists to waive the stay provided by Fed. R. Bankr. P. 6004(h) because paragraph 4 of the Settlement Agreement requires the parties to consummate the Sale within fourteen (14) days after entry of the Sale Order. At the sale closing, the parties will execute an application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval. Closing may occur before final MLCC approval, and a later denial or failure to obtain approval will not unwind the completed transfer of the other Business Assets or the other completed settlement transactions, subject to the continuing Liquor License obligations in the Settlement Agreement and this Order.

**ORDER**

1. The Motion is GRANTED as provided in this Order. Any objections not resolved, withdrawn, or expressly preserved by this Order are overruled.

2. The Settlement Agreement, including the mutual releases and the transactions contemplated by it, is approved under Fed. R. Bankr. P. 9019. This Order shall be construed consistently with the Settlement Agreement; no provision of this Order materially modifies the Parties' obligations except as expressly stated and approved after notice.

3. The Debtor is authorized under 11 U.S.C. § 363(b) to sell the Business Assets to Cooley on the terms of the Settlement Agreement. The

Business Assets have the meaning stated in paragraph 2 of the Settlement Agreement and include all assets owned by the Debtor as of Closing, whether tangible or intangible and wherever located, including cash and deposit accounts, accounts receivable, inventory, furniture, fixtures, equipment and replacement equipment, general intangibles, and the Debtor's transferable interests in Class C License No. L-000403981 and SDM License No. L-000405791 (collectively, the "Liquor License"), subject to applicable law and MLCC approval. The Business Assets do not include financial records that the Debtor or its principal reasonably needs to retain for legal, tax, accounting, regulatory, or record-retention purposes, the Second DIP Account, or any funds held in the Second DIP Account. The parties are authorized to execute the documents reasonably necessary to reassign the Liquor License to Cooley, including at the sale closing an application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval of the transfer.

4. At Closing, Cooley shall pay the $49,283.00 Net Purchase Proceeds directly as follows: (a) $20,000.00 to the IOLTA/client trust account of Kimberly Ross Clayson, the Subchapter V Trustee, to be held in escrow pending Court approval of the Trustee's fees and expenses; (b) $15,000.00 to the IOLTA/client trust account of Robert N. Bassel, Debtor's counsel, to be held in escrow pending Court approval of his fees and expenses; and (c) $14,283.00 to the Second DIP Account maintained by the Debtor for the benefit of Gjura. The Net Purchase Proceeds are proceeds of the Business Assets and property of the estate. Cooley's consensual Carve-Out and the foregoing distribution are APPROVED. Cooley shall have no cash-payment obligation under the Settlement Agreement in excess of $49,283.00.

5. The professional-fee amounts funded under paragraph 4 shall remain in the respective IOLTA/client trust accounts until disbursed pursuant to Court order, and nothing in this Order authorizes payment of professional compensation before allowance. Any portion of either professional-fee escrow not approved for payment to the intended professional shall be returned to the Debtor and deposited into the Second DIP Account unless otherwise ordered. The Second DIP Account and all funds deposited into it remain property of the Debtor's bankruptcy estate and are excluded from the Business Assets. The initial $14,283.00 deposited into the Second DIP Account is APPROVED for payment to Gjura as an administrative expense in consideration for his execution and performance of the covenant not to compete, his release, and his cooperation in the transaction, all of which are necessary to close the transaction and benefit the estate. Upon Closing and payment of the $49,283.00 as required by the Settlement Agreement,

Cooley and FBZ shall have no further lien, security interest, or claim against the Net Purchase Proceeds or the Second DIP Account.

6. At Closing, the transfer of the Business Assets and the payments and releases required by the Settlement Agreement shall constitute full and final satisfaction, discharge, and release of the obligations of the Debtor and Gjura under the Security Documents, Guaranty, related 2022 closing documents, and all amounts claimed by FBZ under the Lease. No deficiency or further Lease amount shall be due from the Debtor or Gjura after Closing.

7. The Sale is authorized free and clear of the liens, claims, encumbrances, and interests of Cooley and FBZ under 11 U.S.C. § 363(f)(2). Those interests are satisfied and released at Closing and shall not survive against the transferred Business Assets. Cooley and FBZ shall execute documents reasonably necessary to evidence those releases. Cooley shall file a UCC-3 terminating Michigan UCC Financing Statement No. 20220921000539-7, and FBZ shall file a UCC-3 terminating Michigan UCC Financing Statement No. 20220921000739-5; each shall provide evidence of filing to Debtor's counsel within three (3) business days after Closing.

8. The Sale is authorized free and clear of the disputed interests asserted by Jaris Lending, LLC / First Internet Bank of Indiana and Middesk, Inc. as Representative under 11 U.S.C. § 363(f)(4). Any interest ultimately determined to be valid shall attach, if at all, to the Net Purchase Proceeds with the same validity, priority, and extent it had in the Business Assets, subject to the Settlement Agreement, the Court-approved Carve-Out, the Debtor's objections, and further order of the Court. Any timely request for adequate protection shall be determined under 11 U.S.C. § 363(e). Nothing in this Order determines the allowance, validity, perfection, or priority of any disputed Jaris/First Internet or Middesk claim except to authorize the Sale free and clear under § 363(f)(4).

9. The Sale is AS IS, WHERE IS, WITH ALL FAULTS, except for obligations expressly stated in the Settlement Agreement. The inspection and approval condition in paragraph 5 of the Settlement Agreement remains applicable according to its terms.

10. The Debtor, Cooley, FBZ, Gjura, and their authorized representatives may execute and deliver the bill of sale, the application and other Liquor License transfer and escrow documents, UCC termination documents, and other instruments reasonably necessary to consummate the transactions, provided no closing document materially alters the obligations stated in the Settlement Agreement without a written

agreement signed by all affected Parties and, if required, further Court approval.

11. At Closing, the Debtor shall surrender possession of the Premises to FBZ, FBZ shall accept the surrender, and the Lease shall terminate without any continuing rent, repair, restoration, holdover, or other lease obligation of the Debtor or Gjura.

12. Effective only upon Closing and Cooley's payment of the full $49,283.00 Net Purchase Proceeds in the manner required by paragraph 2 of the Settlement Agreement, the releases in paragraph 8 of the Settlement Agreement are APPROVED and effective according to their terms. The "Creditor Released Parties" are Cooley and FBZ and each of their respective current and former shareholders, members, managers, officers, directors, employees, agents, representatives, attorneys, accountants, professionals, affiliates, predecessors, successors, assigns, and insurers. The "Debtor Released Parties" are the Debtor and Gjura and each of their respective current and former shareholders, members, managers, officers, directors, employees, agents, representatives, attorneys, accountants, professionals, affiliates, predecessors, successors, assigns, and insurers. The releases include all claims the releasing parties have or might have, known or unknown, including claims raised in the Circuit Court Action, this bankruptcy case, claims arising out of the Security Documents, Guaranty, Lease, UCC filings, sale of the Business Assets, related 2022 closing documents, and any alleged defamation. Claims for breach of the Settlement Agreement and obligations concerning reassignment or transfer of the Liquor License under paragraph 7 are not released. Without limiting the foregoing, Cooley and FBZ release the Debtor and Gjura from any deficiency, Guaranty obligation, rent claim, attorney fee, collection cost, late fee, interest, or other amount arising from the settled documents and transactions. Each Released Party is an intended third-party beneficiary of the releases and may enforce them. If Closing does not occur, the releases do not become effective.

13. Immediately upon Closing, Cooley, the Debtor, and Gjura shall cause Sixth Judicial Circuit Court Case No. 25-215077-CB to be dismissed with prejudice as to the Debtor and Gjura, without costs or attorney fees to any party.

14. The Court approves the two-year, three-mile covenant not to compete described in the Settlement Agreement. The covenant shall be limited solely to Gjura's ownership of a bar or restaurant business competing with the business operated at the Premises, shall become

effective only upon Closing and Cooley's payment of the full $49,283.00 Net Purchase Proceeds, shall be in a form consistent with paragraph 6 of the Settlement Agreement and subject to prior review and approval by Gjura and Debtor's counsel, and shall not impose any additional material restriction or obligation not expressly stated in that paragraph.

15. Nothing in this Order alters the termination provisions in paragraph 12 of the Settlement Agreement. If the Bankruptcy Court does not approve the settlement and Sale to Cooley or Closing otherwise does not occur, the consequences stated in paragraph 12 shall apply. If Closing occurs with the Liquor License transfer application executed and the Liquor License placed in escrow pending MLCC approval, a later denial or failure to obtain MLCC approval shall not unwind the completed transfer of the other Business Assets, Lease termination, releases, lien terminations, or state-court dismissal; the parties shall continue to perform the surviving Liquor License obligations under the Settlement Agreement and this Order.

16. The fourteen-day stay under Fed. R. Bankr. P. 6004(h) is WAIVED. The parties may consummate the Sale immediately after entry of this Order and need not wait fourteen days after entry. Consistent with paragraph 4 of the Settlement Agreement, the sale closing shall occur within fourteen (14) days after entry of this Order unless the parties agree otherwise in writing. At the sale closing, the parties shall execute an application to transfer the Liquor License to Cooley and place the Liquor License in escrow pending MLCC approval of the transfer.

17. This Order and the Settlement Agreement are binding on the Debtor, Cooley, FBZ, Gjura, and all creditors and parties in interest to the extent provided by applicable law and notice.

18. The Settlement Agreement may be amended only by a written agreement signed by all Parties. A nonmaterial written amendment may be implemented without further order if it is consistent with this Order and does not materially adversely affect the estate or a nonconsenting party in interest. Any material adverse modification requires further Court approval on appropriate notice.

19. The Court retains jurisdiction, to the extent permitted by law, to interpret and enforce this Order and the Settlement Agreement and to resolve disputes concerning Closing and the releases and lien terminations required by them.

**Signed on October 20, 2026**

**/s/ Joel D. Applebaum**

**Joel D. Applebaum**
**United States Bankruptcy Judge**